# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL L. DUNKEL, | ) |
| | ) |
|    Plaintiff, | ) |
|              v. | )   Civil No. 15-1632 |
| | ) |
| INTEGRATIVE STAFFING GROUP, | ) |
| and ALLEGHENY PLYWOOD | ) |
| COMPANY, INC. | ) |
| | ) |
|    Defendants. | ) |

## Opinion and Order

Plaintiff Paul Dunkel filed this action against Defendants Integrative Staffing Group and Allegheny Plywood Company, Inc. alleging that he was discriminatorily discharged from his employment in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); the Employee Retirement Income and Security Act, 29 U.S.C. § 1140; and Pennsylvania common law.

Integrative Staffing filed a motion to dismiss the Complaint seeking dismissal of all claims, arguing that Plaintiff failed to plausibly plead an employer-employee relationship between Integrative Staffing and himself, and failed to plead that Integrative Staffing provided Plaintiff with workers' compensation benefits. In response, Plaintiff filed an Amended Complaint.[1] ECF No. 24. Presently before the Court is Integrative Staffing's Motion to Dismiss Counts I, II, and III of Plaintiff's Amended Complaint. ECF No. 29.

---

[1] Allegheny Plywood filed an Answer to the Complaint, which included a Crossclaim against Integrative Staffing. ECF No. 26. Integrative Staffing filed a Motion to Dismiss Allegheny Plywood's Crossclaim, which Motion was dismissed as moot when Allegheny Plywood filed an Amended Answer and Crossclaim. ECF 31. On May 19, 2016, Integrative Staffing filed a Renewed Motion to Dismiss the Crossclaim. ECF No. 36.

Integrative Staffing concedes that Plaintiff's Amended Complaint now properly asserts that Integrative Staffing did provide workers' compensation benefits, and therefore does not seek dismissal of Count IV. Integrative Staffing continues to argue that the remaining Counts must be dismissed because the Amended Complaint still fails to sufficiently plead an employer-employee relationship. For the reasons set forth below we will deny Integrative Staffing's motion.

**I.     Relevant Background**

Integrative Staffing is an industrial and administrative staffing agency located in Coraopolis, Pennsylvania. Am. Compl. ¶¶ 6.c. & b. Integrative Staffing sponsored an ERISA group welfare plan (health) and provided workers' compensation insurance coverage to Mr. Dunkel. Am. Compl. ¶¶ 6.f. & g, & 8.a.. Mr. Dunkel's paychecks were issued by Integrative Staffing, withholding taxes were paid by Integrative Staffing, and Integrative Staffing considered Mr. Dunkel as its employee. Am. Compl. ¶ 8.

Allegheny Plywood is a wholesale distributor of cabinet grade hardwood plywood, industrial panel products, laminate, solid surface and quartz surfacing products to the cabinet and countertop industry located in Pittsburgh, Pennsylvania. Am. Compl. ¶¶ 7.a-c. Allegheny Plywood sponsored an ERISA group welfare plan (health). Am. Compl. ¶ 7.f. Allegheny Plywood exercised daily control of Mr. Dunkel's work, supervised him, set his schedule and otherwise employed Mr. Dunkel. Am. Compl. ¶¶ 9, 10.

Mr. Dunkel asserts that Integrative Staffing and Allegheny Plywood were joint employers of him under the Rehab Act, ERISA and Pennsylvania common law. Am. Compl. ¶ 11. Mr. Dunkel was hired by Integrative Staffing and Allegheny Plywood as a Delivery Driver on May 12, 2014. Am. Compl. ¶¶ 5.b, 12. The position for which he was ultimately hired was

advertised on Craigslist as a CDL (Commercial Driver's License) driver position for a Pittsburgh-based company. Am. Compl. ¶ 13.

Mr. Dunkel called Allegheny Plywood to inquire about the job, and was told that the position was not through a temp/staffing agency. Am. Compl. ¶ 14. He sent his resume directly to Allegheny Plywood. Am. Compl. ¶ 15. Allegheny Plywood called him back to tell him he had the job and that he was to report to Integrative Staffing. Am. Compl. ¶ 15. He reported to Integrative Staffing in Coraopolis and was informed that it was the Human Resources office for Allegheny Plywood. Am. Compl. ¶ 16. While at Integrative Staffing he completed paperwork, and was then sent to Allegheny Plywood's location in Pittsburgh. Am. Compl. ¶ 17. At Allegheny Plywood he completed additional paperwork, and was told to report for work the next day, May 12, 2014. Am. Compl. ¶ 18.

Mr. Dunkel only received work orders from Allegheny Plywood, not Integrative Staffing, he reported to an Allegheny Plywood supervisor, and did not report to anyone at Integrative Staffing. Am. Compl. ¶ 23. In order to perform his job he was given a delivery truck, driver's log, telephone, and fuel card, all supplied by Allegheny Plywood. Am. Compl. ¶ 22. Furthermore, the "only things associated with Integrative Staffing were: time sheets (completed and signed off by Allegheny Plywood); pay checks under Allegheny Plywood's control; and, workers' compensation insurance coverage provided by Integrative Staffing." Am. Compl. ¶ 24. Mr. Dunkel's Amended Complaint further alleges that he performed his duties satisfactorily and that he was eligible to participate in the ERISA health welfare plan sponsored by Allegheny Plywood. Am. Compl. ¶¶ 27, 28.

On July 29, 2014, while performing his duties Mr. Dunkel was struck in the head while unloading a counter-top he was delivering to a customer. Am. Compl. ¶¶ 29-30. He reported the

incident and the injury to Defendants by text messages and telephone call the same date it occurred. Am. Compl. ¶¶ 31. Mr. Dunkel sustained a concussion and was taken to the hospital where he remained until August 1, 2014. Am. Compl. ¶¶ 29, 32-33. While in the hospital, Mr. Dunkel was terminated from his employment by Defendants by way of a voicemail left by an agent of integrative Staffing. Am. Compl. ¶¶ 34-35, 5c, 19.

While in the hospital Mr. Dunkel also provided relevant information to a representative from Integrative Staffing's workers' compensation insurance carrier who came to visit him in person at the hospital. Am. Compl. ¶¶ 36-38. The representative completed a claim form for Mr. Dunkel but did not provide him with a copy of the completed form. Am. Compl. ¶ 39.

After discharge from the hospital, Mr. Dunkel was advised by his own doctors that due to his injury he would not be medically cleared to drive a commercial vehicle. Am. Compl. ¶¶ 40-41. Mr. Dunkel approached Defendants regarding his new restrictions and asked to return to work with accommodations. Am. Compl. ¶ 42. Defendants refused to offer Mr. Dunkel a position and did not give him a reason, not did Defendants ever inform Mr. Dunkel of the initial reason for his termination. Am. Compl. ¶¶ 43, 44. Mr. Dunkel therefore claims that Defendants terminated him (i) because of his medical condition and Defendants' perception that this condition would substantially impair his ability to perform work; (ii) because Defendants were unwilling to accommodate Mr. Dunkel; and (iii) in retaliation for Mr. Dunkel having reported a work-related injury and filing for worker's compensation benefits. Am. Compl. ¶ 51.

In <u>Count I</u>, he asserts a failure to accommodate claim under the Rehabilitation Act. In <u>Count II</u>, he alleges a claim of discriminatory discharge based on his disability in violation of the Rehabilitation Act. In <u>Count III</u>, Mr. Dunkel alleges a claim of discrimination under ERISA

4

based on his disability.  Finally, in Count IV he alleges wrongful discharge under Pennsylvania Common law.

## II. Standards of Review

In ruling on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted a Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) , quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002), and citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, n.8 (2007).

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678, quoting Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678, citing Twombly, 550 U.S. at 556.  "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  "This [standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citation omitted).

If a court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. As explained in Phillips,: "We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." 515 F.3d 236, citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002)).

### III. Discussion

Integrative Staffing seeks dismissal of Counts I, II, and III of the Amended Complaint. Integrative Staffing argues that under common law agency principles there is no employment relationship between Integrative Staffing and Mr. Dunkel for purposes of the Rehabilitation Act or ERISA. Int. Staff. Br. 4, citing, *inter alia*, Nationwide Mut. Ins. Co. v. Darden, 112 S. Ct. 1344, 1348 (U.S. 1992) ("adopt[ing] a common-law test for determining who qualifies as an "employee" under ERISA). Integrative Staffing further argues that it cannot be considered Mr. Dunkel's employer because it is a temporary employment agency exercising no control over Mr. Dunkel's responsibilities or duties once he is on assignment.

Mr. Dunkel responds by arguing that his Amended Complaint has set forth sufficient allegations against Integrative Staffing to withstand the motion to dismiss, and at a minimum, discovery on the issue would be necessary before an informed decision can be rendered.

Mr. Dunkel also argues that Integrative Staffing contradicts itself by conceding that Plaintiff has properly asserted a common law wrongful discharge claim against Integrative Staffing in Count IV. Mr. Dunkel argues that Count IV, a Pennsylvania common law wrongful discharge claim, presumes that an employer-employee relationship exists and speaks directly to Integrative Staffing's power to terminate Mr. Dunkel. Therefore, because Integrative Staffing

has accepted that the wrongful discharge claim is properly plead, it necessarily concedes that an employer-employee relationship exists.

We believe it is premature at this stage to determine the employer-employee relationship as a matter of law. However, as discussed below, the applicable law appears to weigh in favor of finding that Integrative Staffing and Allegheny Plywood were <u>joint employers</u>, at least as alleged in the Amended Complaint.

The common-law test cited by Integrative Staffing for distinguishing between an employee and an independent contractor was described in <u>Darden</u> as follows:

> "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." <u>Darden</u>, 503 U.S. at [322–26], 112 S.Ct. at 1348–49 (quoting [<u>Community for Creative Non–Violence v.</u>] <u>Reid</u>, 490 U.S. [730] at 751–52, 109 S.Ct. [2166] at 2178–79[, 104 L.Ed.2d 811 (1989)] (footnotes omitted)).

<u>Verdecchia v. Douglas A. Prozan, Inc.</u>, 274 F. Supp. 2d 712, 721 (W.D. Pa. 2003), quoting <u>Kellam v. Snelling Personnel Servs.</u>, 866 F.Supp. 812, 814–815 (D.Del.1994), *affirmed,* 65 F.3d 162 (3d Cir.1995). "[W]hen it set out the common-law agency test in <u>Darden</u>, the Supreme Court noted that 'all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" <u>Butterbaugh v. Chertoff</u>, 479 F. Supp. 2d 485, 493 (W.D. Pa. 2007), quoting, <u>Darden</u>, 503 U.S. at 324, 112 S.Ct. 1344 (citations omitted).

7

In Deeter v. Trinity Services Group, Inc., 2015 WL 3504959, at *2 (W.D. Pa. June 3, 2015), cited by Integrative Staffing, the Court discussed "joint employers," stated that "while an employment agency can be considered a joint employer under certain circumstances, those circumstances include the right to control the means and manner of employment, including the decision to hire and/or fire; assignments and the work rules that would apply to the employee; compensation, benefits and hours; the day to day supervision, including imposing discipline; and maintaining employee records." Deeter, 2015 WL 3504959, at *2 n.2, citing Abdallah v. Allegheny Valley Sch., 2011 WL 344079, at *3 (E.D. Pa. Feb. 1, 2011) and Butterbaugh, 479 F. Supp. 2d at 491.

In Abdallah, the Court discussed that the United States Court of Appeals for Third Circuit "has noted that independent legal entities will be considered joint employers where both employers exert significant control over the same employees with evidence demonstrating that they share or co-determine those matters governing essential terms and conditions of employment." Abdallah, 2011 WL 344079, at *3 (emphasis added), citing Nat'l Labor Relations Bd. v. Browning–Ferris Indus. of Pennsylvania, Inc., 691 F.2d 1117, 1124 (3d Cir.1982). In addressing a Rule 12(b)(6) motion to dismiss, the Abdallah Court declined to dismiss the claims against the employment agency as a matter of law in light of allegations that it maintained significant power over his employment; delegated daily assignments, and "treated Plaintiff as an employee and required that he adhere to its policies and directions during his tenure there." Abdallah, 2011 WL 344079, at *4.

The Butterbaugh Court discussed several different tests to determine employer-employee status. In particular, the Court discussed the joint employer test, noting that the Third Circuit Court stated that this test asks whether "'one employer while contracting in good faith with an

8

otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" Butterbaugh, 479 F. Supp. 2d at 491, quoting Browning-Ferris, 691 F.2d at 1123.  The Butterbaugh Court further noted that subtle differences between a joint employer test and the Darden common law test, observing that while "the central question of Browning-Ferris [joint employer test] seems identical to that of [the common law test of] Darden, different factors guide the analysis." Butterbaugh, 479 F. Supp. 2d at 491.  The factors that guide the joint employer test have been articulated by "Courts in the Third Circuit [that] have distilled the Browning-Ferris joint-employer test into the following three factors: '1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; 2) day-to-day supervision of employees, including employee discipline; and 3) control of employee records, including payroll, insurance, taxes and the like.'" Id., quoting Cella v. Villanova Univ., 2003 WL 329147, *7 (E.D.Pa. Feb 12, 2003).  Incidentally the Butterbaugh Court also noted a preference for the joint-employment test in a series of Rehabilitation Act.  Id. 479 F. Supp. 2d at 494.

Applying the law to this case, at this stage of the pleadings we find that Mr. Dunkel has sufficiently alleged claims against Integrative Staffing that would make it premature to dismiss. Mr. Dunkel asserts that Integrative Staffing and Allegheny Plywood were joint employers; that Allegheny Plywood told him that the position was not through a temp/staffing agency; and that he was hired jointly.  Once Allegheny Plywood agreed to offer the job to Mr. Dunkel he was sent directly to Integrative Staffing in Coraopolis, who told him that it was the Human Resources office for Allegheny Plywood.  The Amended Complaint also alleges that Integrative Staffing sponsored an ERISA group welfare plan (health), provided workers' compensation insurance

coverage, issued paychecks and withheld taxes. Mr. Dunkel also claims that he informed "Defendants" of his injury the day it occurred. Once he was injured, he was visited by a representative from Integrative Staffing's workers' compensation insurance carrier, who obtained relevant information and completed a claim form. Finally, Mr. Dunkel claims he was terminated by Integrative Staffing, and that Defendants refused to offer accommodations.

We note that in <u>Deeter</u>, it appears that although the Court may have relied on a slightly expansive version of the Third Circuit's joint employer test, it nonetheless explicitly noted that the "absence of any facts from which it could be inferred that [the employment agency] took part in the decision to terminate Plaintiff's employment" was fatal to plaintiff's claim. <u>Deeter</u>, 2015 WL 3504959, at *2. Moreover, the plaintiff in <u>Deeter</u> made no allegations that the employment agency ever "took an adverse employment action against her." <u>Id.</u> 2015 WL 3504959, at *2. In fact, all the plaintiff alleged was that the employment agency "merely procured employment for Plaintiff with an employer." <u>Id.</u> 2015 WL 3504959, at *2 n.2.

In contrast, in this case Mr. Dunkel alleges that Integrative Staffing did much more than merely procure employment. He explicitly alleges that Integrative Staffing was the actor that terminated him (and it can be inferred from the allegations that it was Integrative Staffing's decision to terminate him). Thus, it is likely that under the set of facts in this case the <u>Deeter</u> Court would also deny the motion to dismiss. Accordingly, we will deny Integrative Staffing's motion to dismiss.

**IV.    Conclusion**

For the reasons stated above we will deny Integrative Staffing's motion to dismiss Counts I, II, and II of Plaintiff's Amended Complaint. We note that our ruling is limited by the fact that we are deciding a motion to dismiss, and that it is possible that discovery will reveal sufficient

10

facts to support a similar dispositive motion by Integrative Staffing at the appropriate time. Because we are denying the motion to dismiss we will also Order Integrative Staffing to file its Answer to the Amended Complaint.


Date: May 23, 2016

Maurice B. Cohill, Jr.
Senior United States District Court Judge

# ORDER

AND NOW, to-wit, this 23rd day of May, 2016, for the reasons stated in the accompanying Opinion, it is hereby ORDERED, ADJUDGED and DECREED that Defendant Integrative Staffing Group's Motion to Dismiss (ECF No. 29) is hereby DENIED..

IT IS FURTHER ORDERED that Integrative Staffing Group shall file its Answer to the Amended Complaint no later than June 6, 2016.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Court Judge